JO/BAB

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

ARENDOVICH INVESTMENTS, INC.,           )
                                        )
            Plaintiff,               )
                                        )
vs.                                     )     No. 1-15-cv-04978
                                        )        (Judge Kocoras)
NNR GLOBAL LOGISTICS, INC., and         )
HYPER TRUCKING, INC.,                   )
                                        )
           Defendants.              )

## DEFENDANT, HYPER TRUCKING, INC.'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

NOW COMES the Defendant, HYPER TRUCKING, INC. ("Hyper"), by its attorneys CHILTON, YAMBERT PORTER, LLP and as for its Motion to Dismiss Plaintiff's Complaint, states as follows:

### INTRODUCTION

Plaintiff, Arendovich Investments, Inc. ("Plaintiff") filed its Complaint at Law, on May 5, 2015, in the Circuit Court of Cook County, Illinois, seeking damages arising from the loss of certain cargo (copper cathode) transported from China to Decatur, Illinois. (See Plaintiff's Complaint at Law, attached hereto as Exhibit 1). On June 1, 2015, Hyper filed its Notice of Removal, removing this matter from the Circuit Court of Cook County, Illinios, with consent of Co-Defendant, NNR Global Logistics, Inc. ("NNR"), pursuant to the Federal Carmack Amendment, 49 U.S.C. § 14706 *et seq*. ("Carmack Amendment"). (See Hyper's Notice of Removal attached hereto as Exhibit 2).

The Counts of Plaintiff's Complaint at Law, against Hyper (Count I for "Negligence in Bailment" and Count II for "Conversion") must be dismissed because these Counts are State common law claims which are completely preempted by the Federal Carmack Amendment, 49

1

U.S.C. § 14706, ("Carmack") and Federal preemption doctrine concerning claims arising from prices, routes, and services of motor carriers, or alternatively, the Federal Carriage of Goods by Sea Act, 46 U.S.C.A. § 30701 ("COGSA").

## BACKGROUND

Plaintiff, Arendovich Investments, Inc., is an Illinois Corporation doing business in the State of Illinois, which allegedly purchased $98,600.00 of copper cathode from a third-party corporation located in China, Dalian Ding Ding Import Corporation. (Ex. 1, ¶¶1, 6, 7). Defendant, NNR, is an Illinois corporation, which Plaintiff alleges was its logistics agent, retained to facilitate the transportation of the copper cathode from China to Illinois. (Ex. 1, ¶¶2, 3, 9). It appears that NNR is a Freight Forwarder[1] or Non Vessel Owning Common Carrier ("NVOCC")[2], where it provides transportation services for the movement of cargo by ocean vessel, rail carrier, and motor carrier. It is alleged that NNR caused a sealed shipping container purporting to contain the subject copper cathode to be moved from China to Decatur, Illinois pursuant to Plaintiff's request by ocean vessel, overland rail, and motor carrier. (Ex. 1, ¶16) Defendant, Hyper, is an Illinois corporation, and licensed motor carrier, that was allegedly retained by NNR to move the subject container containing copper cathode from Harvey, Illinois to Decatur, Illinois. (Ex. 1, ¶¶4, 16, 19, 20).

Plaintiff's Complaint at Law seeks relief against Hyper, under State common law theories of Negligence in Bailment (Count I) and Conversion (Count II). (Ex. 1, p. 7-8). Specifically, Plaintiff alleges that it contracted with Dalian Ding Ding Import Corporation, a Chinese

---

[1] A "freight broker" is as a "person holding itself out to the general public (other than as a pipeline, rail, motor, or water carrier) to provide transportation of property for compensation and in the ordinary course of its business (A) assembles and consolidates, or provides for assembling and consolidating, shipments and performs for break-bulk and distribution operations of the shipments; (B) assumes responsibility for the transportation from the place of receipt to the place of destination....49 U.S.C. § 13102.

[2] An NVOCC is a common carrier that (A) does not operate the vessels by which the ocean transportation is provided; and (B) is a shipper in its relationship with an ocean common carrier. 49 U.S.C. § 40102.

business, for the purchase of copper cathode for the price of $98,600.00. (Ex. 1, ¶7). The copper was allegedly shipped by sealed contained in an ocean vessel to Canada, and then by overland rail to Harvey, Illinois. (Ex. 1, ¶9, 16). Hyper picked up the container in Harvey, Illinois, and hauled it by tractor-trailer to Decatur, Illinois. (Ex. 1, ¶19-20). Plaintiff alleges that when the container was opened by Plaintiff in Decatur, Illinois, there was no copper product in the trailer. (Ex. 1, ¶27). Plaintiff requests judgment against Hyper and NNR for total damages of $815,427.36, which includes the alleged price of the goods, travel costs, expenses, financing charges, warehouse fees, lost revenue and punitive damages. (Ex. 1, ¶31, p. 11).

However, Plaintiff's claims against Hyper are governed by the terms of the Bills of Lading issued pertaining to the movement of the cargo and Federal Law, which exclusively governs such a claim for cargo loss. Specifically, NNR issued a Through Bill of Lading relative to the subject cargo, which directs the subject cargo to be shipped from Dalian Ding Ding Import Export, Co., Ltd., Port of Xingang, China, through the Port of Chicago, Illinois, to A.I. Inc. [Arendovich] in Decatur, Illinois.[3] Additionally, Hyper issued a Bill of Lading relative to its movement of the subject cargo from Harvey, Illinois to Decatur, Illinois. (See Hyper's Bill of Lading attached to the Declaration of Dominick D'agata, attached hereto as Ex. 4) Accordingly, Plaintiff's claims against Hyper are governed exclusively by Carmack and Federal law regulating a motor carrier's prices, routes, and services. Additionally, and in the alternative, because the shipment originated overseas complete preemption is provided pursuant to COGSA. Indeed, the Federal District Courts have exclusive jurisdiction over the claims alleged by the Plaintiff. *V.R. Compounding Corp. v. Occidental Chemical Corp.*, 2000 WL 1368045 (N.D. Ill. 2000).

---

[3] We understand that NNR will be filing a Motion to Dismiss Plaintiff's Complaint at Law on or before July 3, 2015, and will attached NNR's Through Bill of Lading as an Exhibit with a Declaration of the representative of NNR as foundation for the Through Bill of Lading. That NNR Through Bill of Lading will become part of the record before this Court and is incorporated herein as Exhibit 3 to Hyper's Motion to Dismiss.

Therefore, Plaintiff's claims against Hyper set forth in Counts I and II of the Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## LEGAL STANDARD FOR DISMISSAL

Under the Federal Rules of Civil Procedure:

> "every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion…(6) failure to state a claim upon which relief can be granted…"

FED R. CIV. P. 12(b)(6).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6). Plaintiff fails to state a claim against Hyper upon which relief may be granted because Plaintiff has improperly alleged State common law claims for relief.

## ARGUMENT

The Carmack Amendment.

The facts alleged in the "Background Count" (Ex. 1, ¶¶ 1- 32) of Plaintiff's Complaint demonstrate that Plaintiff seeks damages for the alleged loss of goods (the copper cathode) during transport in international and interstate commerce pursuant to Bills of Lading. Therefore, Carmack applies to these claims and preempts Plaintiff's State common law claims against Hyper for bailment and conversion. In short, these claims are not actionable.

To provide uniformity in the law pertaining to shipments of goods through interstate commerce, Congress enacted the Carmack Amendment. *Korer v. Danita Corp.*, 548 F.Supp.2d 1103, 1104 (2008).

The Carmack Amendment provides that:

A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105 are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading and, except in the case of a freight forwarder, applies to property reconsigned or diverted under a tariff under section 13702. Failure to issue a receipt or bill of lading does not affect the liability of a carrier. A delivering carrier is deemed to be the carrier performing the line-haul transportation nearest the destination but does not include a carrier providing only a switching service at the destination.

49 U.S.C.A. § 14706 (West)

Congress ensured the national uniformity of carrier liability in two ways, "by preempting state causes of action against carriers for damages or lost goods; and by placing substantive limits on the rights of carriers to contract away liability." *Korer v. Danita Corp.*, 548 F.Supp.2d at 1104. Indeed, the preemptive sweep of Carmack is longstanding and well-established Federal Law. See, *Adams Express Co. v. Croninger*, 226 U.S. 491 (1913). The "Carmack Amendment thus preempts state law claims and provides the exclusive remedy against carriers for goods lost or damaged during an interstate shipment." *Korer*, 548 F.Supp.2d at 1104-1105; citing *REI Transport, Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 697-98 (7th Cir. 2008); and *N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 456 (7th Cir., 1996).

This honorable Court recognized in its 1993 decision in the *Miller* case that State law claims arising from alleged lost or damaged goods against a carrier are completely preempted under Carmack. *Miller v. Reebie Storage and Moving Co.*, 1993 WL 414689 (Judge Kocoras

N.D. Ill. 1993). Specifically, in *Miller*, this Court, following Seventh Circuit precedent, dismissed common law counts for breach of contract, negligence, and various statutory consumer fraud counts arising from a household goods move from Chicago to Nova Scotia, Canada. *Miller*, 1993 WL 414689. Accordingly, this Court should similarly dismiss Plaintiff's claims against Hyper.

Indeed, it is has been well settled by the Federal Courts that State law and common law claims arising from the interstate movement of cargo, for instance, those for negligence, bailment, conversion, and willful and wanton conduct, fall exclusively under the Carmack Amendment and must be dismissed. See, *Hughes v. United Van Lines, Inc.,* 829 F.2d 1407, 1414 (7th Cir. 1987) (which declared that "the Carmack Amendment preempts all State and common law remedies and therefore held that State law claims for negligence, conversion, and negligent infliction of emotional distress arising from fire damage to household goods were preempted"); *Sentry Ins. Co. v. Transcon Lines,* 1989 WL 76011 (N.D. Ill. 1989) (Court dismissed negligence and bailment counts pursuant to Carmack preemption).

Thus, Plaintiff's claims against Hyper are preempted and must be dismissed because they fail to state a claim upon which relief can be granted. This is of crucial importance because Carmack "limits the carrier's liability to the 'actual loss or injury to the property' damaged en route, 49 U.S.C. § 14706(a)(1), and a shipper cannot bypass these limits by filing a state suit…" *REI Transport, Inc.*, at 698. Accordingly, the Plaintiff cannot claim damages beyond those allowed under Carmack through seeking relief under a State common law theories.

The decision in *Mitsui Sumitomo Ins. Co., Ltd., v. Moore Transp., Inc.*, 500 F.Supp.2d 942 (2007) is instructive. In *Mitsui*, a container of 1,500 CD-tape audio units was allegedly shipped from Biatorbagy, Hungary to Greenwood, Indiana. *Mitsui Sumitomo Ins. Co., Ltd., v.*

*Moore Transp., Inc.*, 500 F.Supp.2d at 944. When the container arrived in Greenwood, Indiana, it was empty. *Id.* Mitsui compensated its insured, the purchaser of the cargo, and brought a subrogation action against ARL, Inc. ("ARL"), the carrier that transported the product from Chicago, Illinois to Greenwood, Indiana. *Id.* Plaintiff brought claims against ARL under the Carmack Amendment as well as claims for breach of "intermodal transportation" contract and breach of obligations as a carrier and/or a bailee. *Id.* ARL's motion for summary judgment was granted on Plaintiff's claims for breach of "intermodal transportation" contract and breach of obligations as a carrier and/or a bailee. *Id.* at 955-57.

In granting summary judgment for ARL, the Court stated that the "Carmack Amendment preempts a shipper from seeking state and common law remedies where goods are damaged or lost in interstate commerce." *Id.* at 955. The Carmack Amendment applies to all state or common law claims that seek damages for the loss of the cargo. *Id.* at 956. Therefore, the Court held that the Carmack Amendment completely preempted Plaintiff's common law claims and granted ARL's motion for summary judgment, dismissing Plaintiff's state and common law claims. *Id.* *Mitsui* highlights that State common law claims against a carrier for an alleged loss of a shipment are completely preempted under the Carmack Amendment.

In the instant matter, Hyper is a motor carrier that was hired to provide the inland motor carrier transportation of the subject copper cathode that originated in China, from Harvey, Illinois to Decatur, Illinois. Plaintiff's allegations against Hyper stem solely from the alleged loss or injury to the transported goods. Hyper transported the subject container from Harvey, Illinois to Decatur, Illinois pursuant to the NNR Through Bill of Lading and Hyper's own inland Bill of Lading. Thus, Carmack applies to Plaintiff's claim for cargo loss and damages and preempts all common law claims, specifically, those alleged for bailment and conversion.

7

Therefore, Plaintiff has not stated a claim against Hyper upon which relief can be granted and its purported claims for negligence in bailment (Count I) and conversion (Count II) must be dismissed under Federal Rule of Civil Procedure 12(b)(6).

Additionally, Congress codified the preemptive force of Federal Law over claims by shippers against motor carriers through 49 U.S.C. § 14501(c)(1), which is part of the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"). This preemption doctrine derived from the Federal Aviation Administration Authorization Act of 1994 and is commonly known as "FAAAA preemption," and applies to the transportation services of motor carriers. Specifically, the statute provides that "a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier...or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). Accordingly, the Seventh Circuit has recognized that State law claims against motor carriers which concern the "price, route, or service" of a motor carrier, such as fraudulent misrepresentation and conspiracy to commit fraud are preempted under FAAAA preemption. *S.C. Johnson & Son, Inc. v. Transport Corp. of America*, 697 F.3d 544, 557 (7th Cir. 2012). Further, at least one District Court has recognized that FAAAA preemption applies to claims against a motor carrier arising from cargo loss. *BNSF Logistics, LLC v. L&N Express, Inc.*, 2012 WL 525526 (N.D. Cal. 2012) (State law claims by logistics company against a motor carrier arising from alleged loss of a load that went missing were preempted under Carmack and FAAAA preemption doctrine). Accordingly, the Plaintiff cannot escape the preemptive force of Federal Law over his purported claims against Hyper because the claims concern the "price,

8

route, or service...with respect to the transportation of property." Plaintiff's claims must be dismissed pursuant to Carmack preemption, as well as pursuant to FAAAA preemption.

The Carriage of Goods by Sea Act.

Additionally, and in the alternative, Plaintiff's State common law claims are preempted by COGSA and must be dismissed for failure to state a claim upon which relief can be granted. COGSA "applies to every bill of lading or similar document of title which is evidence of contract for the carriage of good by sea to or from ports of the United States, in foreign trade." *Continental Ins. Co. v. Kawasaki Kisen Kasha, Ltd.*, 542 F.Supp.2d 1031, 1033-34 (2008), citing 46 U.S.C. 30701. In the *Kawasaki* decision, the Court declared that "COGSA provides an exclusive remedy and therefore completely preempts state law" claims for goods lost or damaged. *Continental Ins.,* 542 F.Supp.2d at 1034-35. Indeed, the Federal Courts have recognized that claims against a carrier, such as for negligence, breach of contract, and bailment, are completely preempted by COGSA and must be dismissed. *Polo Ralph Lauren, L.P. v. Tropical Shipping & Constr. Co.*, 215 F.3d 1217, 1220 (11th Cir. 2000).

In the Supreme Court decision in *Kirby,* the Court held that where there was a Through Bill of Lading governing the shipment from overseas to the inland destination, Federal maritime law governed the case (i.e., preempted State law) and extended to the rights and liabilities concerning the ocean movement of the freight *and* the inland movement of the freight. *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 28-29 (2004). Under *Kirby* "COGSA leaves no State remedy in its wake; it provides an exclusive remedy and is therefore completely preemptive." *Continental Ins.,* 542 F.Supp.2d at 1034.

Plaintiff's claims against Hyper stem from the alleged loss of goods while transported from China to Illinois under NNR's Through Bill of Lading. Thus, Federal law, COGSA,

9

additionally and alternatively, applies to Plaintiff's claim against Hyper and completely preempts Counts I and II. Therefore, Plaintiff has not stated a claim against Hyper upon which relief can be granted. Accordingly, Hyper's Motion to Dismiss must be granted and Counts I and II of Plaintiff's Complaint must be dismissed with prejudice.

## CONCLUSION

WHEREFORE, Defendant, HYPER TRUCKING, INC., requests that this Honorable Court enter an order granting its Motion to Dismiss Counts I and II of its Complaint at Law with prejudice. Defendant further requests any other additional relief deemed just and proper under the circumstances.

Dated this 2nd of July, 2015

HYPER TRUCKING, INC., Defendant,


By: _____*/s/ Jason Orleans*_____
One of Its Attorneys


Jason Orleans (ARDC # 6258048)
Bradley A. Bertkau (ARDC # 6295889)
CHILTON YAMBERT PORTER LLP
325 Washington Street, Suite 400
Waukegan, IL 60085
Telephone: (847) 625-8200
Facsimile: (847) 625-8262